Rev. 2/11

UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT
## CIVIL APPEAL STATEMENT

*Please TYPE.  Attach additional pages if necessary.*

11th Circuit Docket Number: **15-12213**

| Caption: | District and Division: | Middle District of Fla. (Tampa) |
|---|---|---|
| | Name of Judge: | Hon. Charlene Honeywell |
| FirstBank Puerto Rico, | Nature of Suit: | Bankruptcy Appeal |
| Appellant, | | |

| | |
|---|---|
| | Date Complaint Filed: N/A |
| v. | District Court Docket Number: 8:15-cv-00256 |
| | Date Notice of Appeal Filed: 5/18/2015 |
| Scrub Island Development Group Limited and | ☐ Cross Appeal   ☐ Class Action |
| Scrub Island Construction Limited, | Has this matter previously been before this court? |
| Appellees. | ☐ Yes  ☒ No |
| | If Yes, provide |
| | (a)    Caption: |
| | (b)    Citation: |
| | (c)    Docket Number: |

| | Attorney Name | Mailing Address | Telephone, Fax, and Email |
|---|---|---|---|
| For Appellant:<br>☐ Plaintiff<br>☐ Defendant<br>☒ Other (Specify) | Kenneth N. Klee<br>Daniel J. Bussel<br>Robert J. Pfister<br><br>Attorneys for Creditor<br>FirstBank Puerto Rico | Klee, Tuchin, Bogdanoff &<br>Stern LLP<br>1999 Avenue of the Stars<br>39th Floor<br>Los Angeles, CA 90067 | Ph: 310-407-4000<br>Fax: 310-407-9090<br>Email: kklee@ktbslaw.com<br>dbussel@ktbslaw.com<br>rpfister@ktbslaw.com |
| For Appellee:<br>☐ Plaintiff<br>☐ Defendant<br>☒ Other (Specify) | Harley E. Riedel<br>Daniel R. Fogarty<br>Charles A. Postler<br><br>Attorneys for Debtors-<br>Appellees | Stichter, Riedel, Blain &<br>Prosser, PA<br>110 East Madison St., Suite<br>200<br>Tampa, FL 33602 | Ph: 813-229-0144<br>Fax: 813-229-1811<br>Email: hriedel@srbp.com<br>dfogarty@srbp.com<br>cpostler@srbp.com |

*Please CIRCLE/CHECK/COMPLETE the items below and on page 2 that apply.*

| Jurisdiction | Nature of Judgment | Type of Order | Relief |
|---|---|---|---|
| ☒ Federal Question | ☒ Final Judgment,<br>28 USC 1291 | ☒ Dismissal/Jurisdiction | Amount Sought by Plaintiff:<br>$_____N/A_____ |
| ☐ Diversity | ☐ Interlocutory Order,<br>28 USC 1292(a)(1) | ☐ Default Judgment | Amount Sought by Defendant:<br>$_____N/A_____ |
| ☒ US Plaintiff | | ☐ Summary Judgment | |
| ☒ US Defendant | ☐ Interlocutory Order Certified,<br>28 USC 1292(b) | ☐ Judgment/Bench Trial | Awarded:<br>$_____N/A_____<br>to _____ |
| | ☐ Interlocutory Order,<br>Qualified Immunity | ☐ Judgment/Jury Verdict | |
| | | ☐ Judgment/Directed Verdict/NOV | Injunctions:<br>☐ TRO |
| | ☐ Final Agency Action (Review) | ☐ Injunction | ☐ Preliminary   ☐ Granted |
| | ☐ 54(b) | ☐ Other _____ | ☐ Permanent   ☐ Denied |

Page 2                                    11th Circuit Docket Number: _____ **15-12213** _____

Based on your present knowledge:

(1)  Does this appeal involve a question of First Impression?  ☐ Yes  ☒ No
     What is the issue you claim is one of First Impression?

(2)  Will the determination of this appeal turn on the interpretation or application of a particular case or statute?  ☒ Yes  ☐ No

     If Yes, provide
     (a)  Case Name/Statute      Oakey v. Bennett, 52 U.S. (11 How.) 33, 45-46 (1851)
     (b)  Citation
     (c)  Docket Number if unreported

(3)  Is there any case now pending or about to be brought before this court or any other court or administrative agency that
     (a)  Arises from substantially the same case or controversy as this appeal?  ☒ Yes  ☐ No
     (b)  Involves an issue that is substantially the same, similar, or related to an issue in this appeal?  ☐ Yes  ☒ No

     If Yes, provide
     (a)  Case Name
     (b)  Citation                See attachment
     (c)  Docket Number if unreported
     (d)  Court or Agency

(4)  Will this appeal involve a conflict of law
     (a)  Within the Eleventh Circuit?  ☐ Yes  ☒ No
     (b)  Among circuits?  ☐ Yes  ☒ No

     If Yes, explain briefly:

(5)  Issues proposed to be raised on appeal, including jurisdictional challenges:

     Whether the district court erred by issuing an order (the "Dismissal Order") dismissing FirstBank Puerto Rico's appeal of the bankruptcy court's conclusions that i) the bankruptcy court had jurisdiction over the Debtors chapter 11 cases; ii) the bankruptcy court may exercise in rem jurisdiction over property subject to FirstBank's liens located in the British Virgin Islands ("BVI"); and iii) the bankruptcy court had statutory, constitutional, and/or other authority to order FirstBank to cause dismissal of the BVI Receivership Proceeding.

I CERTIFY THAT I SERVED THIS CIVIL APPEAL STATEMENT ON THE CLERK OF THE U.S. COURT OF APPEALS FOR THE ELEVENTH CIRCUIT AND

SERVED A COPY ON EACH PARTY OR THEIR COUNSEL OF RECORD, THIS ____2____ DAY OF _____June_____ , ___2015___ .

_____                    _____
          Kenneth N. Klee                                      /s/ Kenneth N. Klee
     NAME OF COUNSEL (Print)                             SIGNATURE OF COUNSEL

*Please ATTACH portion of district court, tax court, or agency record described in 11th Cir. R. 33-1(b):   (a) judgments and orders appealed from or sought to be reviewed; (b) any supporting opinion, findings of fact, and conclusions of law filed by the court or the agency, board, commission, or officer; (c) any report and recommendation adopted by an order; (d) findings and conclusions of an administrative law judge when appealing a court order reviewing an agency determination; (e) any agency docket sheet or record index.*

<u>**Attachment to Civil Appeal Statement**</u>

**I. Appellee Contact Information**

  The following is a list of all appellees in the instant appeal and, to the extent known by counsel for Appellant FirstBank Puerto Rico, the name, telephone, fax, and email address of counsel for each appellee:

Daniel R. Fogarty
Charles A. Postler
Harley E. Riedel
Stichter, Riedel, Blain & Prosser, PA
110 East Madison Street, Suite 200
Tampa, FL 33602
Ph.: (813) 229-0144
Email: dfogarty@srbp.com
cpostler@srbp.com
hriedel@srbp.com
*Counsel for Scrub Island Development Group*
*Limited and Scrub Island Construction Limited*

**II. Related Cases**

  The instant appeal is an appeal of an order entered by the U.S. District Court for the Middle District of Florida, Tampa Division (Case No. 8:15-cv-00256-CEH) dismissing FirstBank Puerto Rico's appeal of the Final Judgment Granting Permanent Injunction and Granting Motion to Require Receiver to Turn Over Property (Adv. Docket No. 63) entered by the U.S. Bankruptcy Court for the Middle District of Florida (Case No. 8:13-ap-1071). The underlying bankruptcy case is:

   *In re Scrub Island Development Group Limited, et al.*
   Case No. 8:13-bk-15285 (and related adversary proceedings)
   U.S. Bankruptcy Court, Middle District of Florida (Tampa)

  There are four related appeals currently pending in the Eleventh Circuit Court of Appeals. All four of the appeals arise from the Debtors' bankruptcy case and were dismissed by the District Court; FirstBank is the appellant and the Debtors are appellees in all four appeals. The four appeals are:

*FirstBank Puerto Rico (Appellant) v. Scrub Island Development Group Limited, et al.*
*(Appellees)*
Case No. 8:15-cv-00139-CEH
U.S. District Court, Middle District of Florida (Tampa)

*FirstBank Puerto Rico (Appellant) v. Scrub Island Development Group Limited, et al.*
*(Appellees)*
Case No. 8:15-cv-00255-CEH
U.S. District Court, Middle District of Florida (Tampa)

*FirstBank Puerto Rico (Appellant) v. Scrub Island Development Group Limited, et al.*
*(Appellees)*
Case No. 8:15-cv-00256-CEH
U.S. District Court, Middle District of Florida (Tampa)

*FirstBank Puerto Rico (Appellant) v. Scrub Island Development Group Limited, et al.*
*(Appellees)*
Case No. 8:15-cv-00257-CEH
U.S. District Court, Middle District of Florida (Tampa)

## III. Additional Attachments

Pursuant to Eleventh Circuit Rule 33-1(b), the following orders are attached hereto:

**<u>Exhibit A</u>**: Order Denying FirstBank Puerto Rico's Emergency Motion for Stay Pending Appeal (Dist. Ct. Docket No. 21).

**<u>Exhibit B</u>**: Order Confirming First Amended Joint Plan of Reorganization of Scrub Island Development Group Limited and Scrub Island Construction Limited [etc.] (Bankr. Ct. Docket No. 472).

**<u>Exhibit C</u>**: Order Dismissing FirstBank Puerto Rico's Appeal (Dist. Ct. Docket No. 22).

# Exhibit A

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

In re:

SCRUB ISLAND DEVELOPMENT
GROUP LIMITED,

SCRUB ISLAND CONSTRUCTION
LIMITED

      Debtors.
_____/

FIRSTBANK PUERTO RICO,

      Appellant,

v.                                                                    Case No: 8:15-cv-139-T-36

SCRUB ISLAND DEVELOPMENT
GROUP LIMITED and SCRUB ISLAND
CONSTRUCTION LIMITED,

      Appellees.
_____/

## **ORDER**

      This matter comes before the Court upon the Appellant's Emergency Motion for Stay

Pending Appeal of Order Confirming Debtors' First Amended Joint Plan of Reorganization (Doc.

1), and Appellees' response thereto (Doc. 14)[1]. This action is an appeal of an Order issued in

Bankruptcy Case No. 8:13-bk-15286-MGW, which is pending before Bankruptcy Judge

Williamson in the Middle District of Florida. In the motion, Appellant requests that this Court stay

the effectiveness of the *First Amended Joint Plan of Reorganization of Scrub Island Development*

---

[1] The response was filed by Appellees Scrub Island Construction Limited and Scrub Island Development Group Limited. However, non-party Scrub Island Utility (BVI) Ltd. adopted that response as its own. *See* Doc. 16. Appellee's Official Unsecured Creditors' Committee also sought permission to join in the response. *See* Doc. 17. This request was denied without prejudice for failure to comply with Local Rule 3.01(g). *See* Doc. 20.

*Group Limited and Scrub Island Construction Limited* ("the Plan") in the above-captioned matter pending the instant appeal of the Bankruptcy Court's Order dated January 20, 2015 confirming the plan ("the Confirmation Order"). The Court, having considered the motion and being fully advised in the premises, will deny Appellant's Emergency Motion for Stay Pending Appeal of Order Confirming Debtors' First Amended Joint Plan of Reorganization.

## I.      Background

The United States Bankruptcy Court for the Middle District of Florida (Williamson, J.) ("the bankruptcy court") entered an order confirming the chapter 11 plan in Case No. 8:13-bk-15286-MGW, on January 20, 2015. *See* Doc. 1-1. Appellant FirstBank Puerto Rico ("FirstBank"), a secured creditor in that case, had objected to confirmation of the plan. Its objections were overruled. Following an eight-day trial and entry of the Confirmation Order, FirstBank moved the bankruptcy court for a stay pending appeal. On January 23, 2015, FirstBank filed the instant action and emergency motion because the bankruptcy court had not acted on the Stay Motion. *See* Doc. 1. The current stay will expire on Wednesday January 28, 2015 at noon[2], therefore prompting FirstBank to file an emergency motion requesting that this Court rule on the issue of whether to extend the stay through the appeal. On January 26, 2015 the bankruptcy court entered an Order denying the stay. *See* Case No. 8:13-bk-15286-MGW at Doc. 492 (cited hereinafter as "Doc. 492"). The Order provides a detailed explanation of the relevant facts and procedural background, which this Court adopts by reference for purposes of this Order.

---

[2] The Confirmation Order shortened the fourteen-day stay provided by Federal Bankruptcy Rule 3020 to eight days.

## II.        Standard

On December 1, 2014, an amendment to Federal Rule of Bankruptcy Procedure 8007 was implemented. Prior to this amendment, stays pending an appeal in bankruptcy cases were controlled by Federal Rule of Bankruptcy Procedure 8005.

Because the two rules present similar, if not identical, standards for granting a stay the Court looks to orders interpreting Rule 8007's predecessor for guidance on the interpretation and application of Rule 8007. Thus, to obtain a stay pending appeal, FirstBank "must clearly establish: (1) that the movant is likely to prevail on the merits of its appeal, (2) that the movant will suffer irreparable injury if a stay or other injunctive relief is not granted, (3) that other parties will suffer no substantial harm if a stay or other injunctive relief is granted, and (4) in circumstances where the public interest is implicated, that the issuance of a stay or other injunctive relief will serve, rather than disserve, such public interest." *Tooke v. Sunshine Trust Mortgage Trust*, 149 B.R. 687, 689 (M.D. Fla. 1992). *See also In re Brown,* No. 6:08-CV-1517-Orl-18DAB, 2008 WL 4900179, at *1 (M.D. Fla. Nov. 12, 2008).

"The decision whether to grant a stay pending appeal is left to the sound discretion of the bankruptcy court, and a district court sitting in an appellate capacity reviews the decision for an abuse of discretion." *In re Phillips*, 483 B.R. 254, 257 (M.D. Fla. 2012) (Steele, J.) (citing *In re Colony Square Co.,* 788 F.2d 739, 741 (11th Cir.1986); *In re Lang*, 414 F.3d 1191, 1201-02 (10th Cir.2005)). "The [bankruptcy] court's findings of fact are given substantial deference on appeal and are disturbed only if clearly erroneous." *Lickman*, 301 B.R. at 745 (citations omitted). *See also Finova Capital Corp. v. Larson Pharmacy, Inc.* (*In re Optical Techs., Inc.*), 425 F.3d 1294, 1300 (11th Cir. 2005) (quotations omitted) (An appellate court's "'reluctan[ce] to disturb a bankruptcy

court's judgment in this context is akin to the reluctance we exhibit when exercising abuse of discretion review.").

### III.    Discussion

As required by Rule 8007, FirstBank filed a stay motion in bankruptcy court prior to filing one in this court. *See* Fed. R. Bankr. P. 8007(a)(1). The bankruptcy court denied FirstBank's request for an extension of the stay throughout the appeal, stating, *inter alia,* that the Stay Motion was "another" bad-faith attempt by FirstBank to delay the Debtors' restructuring of their business and is premised on a misrepresentation as to the terms of the confirmed plan. Doc. 492 at pp. 1, 2, 27. The bankruptcy court's 28-page Order denying the stay is well-reasoned, very detailed and appears to be supported by the record in the bankruptcy court, which is much more expansive than what is before this Court.[3]  Upon review of the pleadings in this case and the limited bankruptcy record, this Court agrees with the bankruptcy court that the stay should be denied and finds no abuse of discretion by the bankruptcy court in denying FirstBank's motion to stay pending appeal.

### A.    The movant has not shown that it is likely to prevail on the merits of its appeal.

FirstBank claims that the Confirmation Order is invalid because the plan improperly deprives the bank of its property rights. Therefore, FirstBank contends that it is likely to succeed on the merits of its appeal with at least one, if not all, of its arguments. On the record before it, the Court does not have sufficient information to determine whether Appellant is likely to succeed on the merits of its appeal. For this reason alone, FirstBank has not shown that it is likely to prevail

---

[3] The Court notes that a complete record of the pertinent proceedings in the bankruptcy court has not been provided. Most notably, transcripts of the testimony and the exhibits considered by the Bankruptcy Court, which would assist this Court in its determination as to whether appellant is likely to prevail on the merits, have not been provided.  Additionally, affidavits or other sworn statements supporting facts subject to dispute have not been provided. *See* Fed. R. Bankr. P. 8007 (b) (3).

on the merits of its appeal. Because the moving party must provide satisfactory evidence on all four requirements, a failure to establish this requirement is fatal to its motion. *See In re Bilzerian*, 264 B.R. 726, 729 (Bankr. M.D. Fla. 2001), *aff'd* 276 B.R. 285 (M.D. Fla. 2002).

To the extent that FirstBank contends that the Confirmation Order contravenes Title 11 of the Bankruptcy Code as a matter of law, the Court will endeavor to address this argument. As it did before the bankruptcy court, FirstBank contends that the bankruptcy court did not have jurisdiction to affect its interest in property located in the British Virgin Islands and that the Confirmation Order requires the Bank to dismiss the British Virgin Islands receivership proceeding.  The Court agrees with the bankruptcy court that it has jurisdiction under 28 U.S.C. § 1334(e) over all property of the estate wherever located. This includes property outside of the United States. *See In re British Am. Ins. Co*., 488 B.R. 205, 225 (Bankr. S.D. Fla. 2013).  As to non-debtor property located outside of the United States, the bankruptcy court does not have jurisdiction over this property. The Order of the bankruptcy court indicates that it has not exercised *in rem* jurisdiction over non-debtor property located in the British Virgin Islands. Nothing in the record before this Court refutes this finding. As to dismissal of the receivership, in its Order, the bankruptcy court clarifies the plan and indicates that all FirstBank is required to do is to request that the receivership proceeding be dismissed.  Based on the limited record before this Court, it does not appear that FirstBank is likely to succeed on the merits of its appeal and this factor weighs against granting the stay.[4]

---

[4] As to likelihood of success on the merits, the Court has not addressed any argument raised by FirstBank which includes factual findings, as an adequate record has not been provided.

**B.      The movant will not suffer irreparable injury if a stay is denied.**

FirstBank claims that it will suffer irreparable injury if the plan goes into effect because it will be deprived of liens it holds on certain properties and will be "forever deprived" of valuable collateral. Its argument on this and the two remaining factors is very brief and vague. FirstBank does not demonstrate how it would lose its liens or its collateral under the plan, nor does it explain why this harm would be "irreparable."  Under the plan, it appears that FirstBank will retain its lien rights until the properties are sold and the proceeds used to pay back FirstBank for the loans secured by those properties. *See* Doc. 492 at pp. 24-25. Accordingly, this factor also weighs against the stay.

**C.      Appellees will suffer substantial harm if a stay is granted.**

Again, this element is given only cursory treatment by FirstBank in its Emergency Motion. Based on the record before the court, there is evidence that further delay of the plan's implementation will substantially harm the Debtors because it will deprive them of a substantial cash infusion needed to launch its reorganized operations. A stay would also injure Appellee's creditors by delaying distributions to them under the plan. *See In re F.G. Metals, Inc.*, 390 B.R. 467, 477 (Bankr. M.D. Fla. 2008). The bankruptcy court noted in its Order that FirstBank has made several attempts to delay the implementation of the plan and any further delay would be prejudicial to the Debtors and Creditors. *See* Doc. 492 at pp. 26-27. Accordingly, this factor weighs against the stay as well.

**D.      The issuance of a stay or other injunctive relief will not serve public interest.**

FirstBank claims, without support, that the stay would serve the public interest because it would promote "judicial clarity." However, bankruptcy courts have held that the public's interest is best served by allowing chapter 11 debtors an opportunity to implement a confirmed plan. *In re*

*F.G. Metals, Inc.*, 390 B.R. at 477. Thus, this final factor weighs against the stay. Accordingly, it is

      **ORDERED** that Appellant's Emergency Motion for Stay Pending Appeal of Order Confirming Debtors' First Amended Joint Plan of Reorganization (Doc. 1) is **DENIED**.

      **DONE AND ORDERED** in Tampa, Florida on January 28, 2015.

Charlene Edwards Honeywell
United States District Judge

Copies to:
Counsel of Record and Unrepresented Parties, if any

# Exhibit B

UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION
www.flmb.uscourts.gov

| | |
|---|---|
| In re: | Chapter 11 |
| SCRUB ISLAND DEVELOPMENT GROUP LIMITED, | Case No. 8:13-bk-15285-MGW |
| | Jointly Administered with |
| SCRUB ISLAND CONSTRUCTION LIMITED, | Case No. 8:13-bk-15286-MGW |
| Debtors. _____/ | |

**ORDER CONFIRMING FIRST AMENDED JOINT PLAN OF REORGANIZATION OF SCRUB ISLAND DEVELOPMENT GROUP LIMITED AND SCRUB ISLAND CONSTRUCTION LIMITED UNDER CHAPTER 11 OF TITLE 11, UNITED STATES CODE DATED AS OF JULY 11, 2014, AS MODIFIED, PURSUANT TO 11 U.S.C. § 1129**

These cases came on for eight non-consecutive days of trial commencing on November 3, 2014, to consider confirmation of a joint plan of reorganization filed by Scrub Island Development Group Limited ("SIDG") and Scrub Island Construction Limited ("SICL"), as debtors and debtors in possession (collectively, the "Debtors"). The confirmation trial was held in conjunction with numerous related matters, the most significant of which was the trial in the FirstBank Lender Liability Adversary Proceeding[1] brought by the Debtors against FirstBank. The Creditors Committee intervened in the FirstBank Lender Liability Adversary Proceeding on the side of the Debtors. The Court orally announced its extensive findings of fact and conclusions of law, principally at a hearing held on December 30, 2014, and these findings of fact and conclusions of law are incorporated by reference in this Confirmation Order and shall form the opinion of the Court. The findings of fact and conclusions of law set forth in this

---

[1] All capitalized terms used in this Confirmation Order but not defined herein shall have the meaning ascribed to such terms in the Modified Plan (as defined below).

Confirmation Order are consistent with and implement the Court's oral ruling.

As noted on December 30, 2014, although the parties concluded their presentation of evidence on the confirmation issues, the FirstBank Lender Liability Adversary Proceeding was not fully concluded. Because no final judgment has been entered pursuant to Bankruptcy Rule 7054 in the FirstBank Lender Liability Adversary Proceeding, the Court's findings and conclusions as to liability in that proceeding are not final for purposes of appeal. The damages and remedies, if any, awarded in the FirstBank Lender Liability Adversary Proceeding may, however, have an impact upon the Claims of and payments to FirstBank under this Confirmation Order. References in this Confirmation Order to findings and conclusions in the FirstBank Lender Liability Adversary Proceeding are intended to make it clear that FirstBank's Claims, if they are allowed at all, may be reduced as a result of the FirstBank Lender Liability Adversary Proceeding and to make it clear that the payment terms in the Modified Plan and this Confirmation Order as to FirstBank may also be modified based upon the final judgment in the FirstBank Lender Liability Adversary Proceeding. Included among the damages and remedies requested by the Debtors (but not yet ruled upon by the Court) in the FirstBank Lender Liability Adversary Proceeding are (a) affirmative equitable relief requiring FirstBank to comply with the basic economic terms of the FirstBank February 2014 Term Sheet (referred to for purposes of consistency in this Confirmation Order as the "Shaner Term Sheet"), (b) disallowance of any deficiency claim of FirstBank, (c) compensatory and punitive damages not subject to set-off, and (d) equitable subordination. These matters will be dealt with in the FirstBank Lender Liability Adversary Proceeding. The Court has established a post-trial briefing schedule with respect to the FirstBank Lender Liability Adversary Proceeding and reserves ruling at this time with respect thereto.

Subject only to any relief that may be granted in favor of the Debtors and against FirstBank in the FirstBank Lender Liability Adversary Proceeding, this Confirmation Order will, upon the Effective Date, finally and completely restructure the Debtors' obligations to all of their Creditors, with the FirstBank Claims (as defined below) being subject to further restructuring.[2] Because it is premature for this Court to grant relief in the FirstBank Lender Liability Adversary Proceeding before the scheduled briefing is completed and additional evidence is presented, the Court assumes, solely for purposes of this Confirmation Order, that (a) no relief will be afforded to the Debtors in the FirstBank Lender Liability Adversary Proceeding and that the FirstBank Claims will be allowed as filed, (b) the FirstBank Claims are not subject to subordination, and (c) FirstBank's ballots and §1111(b) election will be allowed to stand. The Court retains jurisdiction to grant any and all appropriate relief in the FirstBank Lender Liability Adversary Proceeding. As the Court noted on December 30, 2014, it is preliminarily disposed based upon evidence received to date to require compliance by FirstBank with the basic terms of the Shaner Term Sheet, and jurisdiction to do so is expressly retained.  This Confirmation Order shall not be deemed to have any *res judicata* or collateral estoppel effect precluding such relief or any other relief in the FirstBank Lender Liability Adversary Proceeding.

In the eight days of trial, the Debtors established, through the presentation of evidence, their entitlement to confirmation under the conditions described above – what the Debtors described in their filings as the "worst case scenario".  Time is of the essence with respect to the Debtors' reorganization.  The evidence is overwhelming and undisputed that, as the Debtors commence the "season," they need to implement their capital improvement projects to achieve

---

[2] Any relief in favor of the Debtors will not adversely impact any party other than FirstBank.  For example, if the Court were to reduce the Claims of FirstBank, require payments from FirstBank to the Debtors, or grant other legal or equitable relief, other Creditors will not be adversely affected by such rulings, and other Creditors may actually benefit from such rulings.  Thus, only the Debtors' obligations to FirstBank will be impacted by any judgment in the FirstBank Lender Liability Adversary Proceeding.

3

the benefits from such expenditures this calendar year.  Thus, it is important and in the best interests of all parties that the significant investment of funds into Scrub Island anticipated by the Modified Plan, much of which will directly improve the FirstBank Collateral, occur as soon as the plan funding is confirmed.  For these reasons, a final order of confirmation at this time is a practical business necessity. Any undue delay in entering this Confirmation Order would prejudice the Debtors, other Creditors, the Debtors' employees, and parties in privity of contract with the Debtors and would adversely impact the Debtors' business operations.  A final Confirmation Order will also allow the Debtors to finalize the plan funding, which will in turn trigger the effectiveness of the Modified Plan.

With respect to the confirmation issues, as contemplated by Local Rule 3020-1(a), the Court has before it a single integrated document [Doc. No. 464-1] filed after this Court's ruling on December 30, 2014 that contains all modifications to the First Amended Joint Plan of Reorganization of Scrub Island Development Group Limited and Scrub Island Construction Limited under Chapter 11 of Title 11, United States Code, dated as of July 11, 2014 [Doc. No. 256][3] (the "Original Plan"), which integrated document shall be referred to in this Confirmation Order as the "Modified Plan".  As set forth below, the Modified Plan meets all of the requirements of §1129 of the Bankruptcy Code and is entitled to confirmation.

The Court specifically finds that:

A.      This Court has jurisdiction over the Debtors, the Bankruptcy Cases, all of the Debtors' Property, wherever located, including but not limited to all Causes of Action, all Claims

---

[3] The modifications to the Original Plan include, without limitation: (a) the Modification of First Amended Joint Plan of Reorganization for Treatment of Class 11 Unsecured Claims of the SIU Entities [Doc. No. 356] (the "SIU Entities Plan Modification"), (b) the Modification of Debtors' First Amended Joint Plan of Reorganization for Treatment of Class 10 Unsecured Claims of Mainsail Related Entities and SIDG Shareholders [Doc. No. 395], and (c) the Debtors' Modification to First Amended Joint Plan of Reorganization to Address Section 1111(b) Election [Doc. No. 368] as supplemented by the Notice of Filing Supplement to Revised Financial Projections Regarding §1111(b) Election [Doc. No. 384] (together, the "§ 1111(b) Plan Modification").

against and Equity Interests in the Debtors, and all Creditors of and Holders of Equity Interests in the Debtors pursuant to 28 U.S.C. § 1334. Confirmation of the Modified Plan is a "core proceeding" pursuant to, without limitation, 28 U.S.C. §§ 157(b)(2)(A), (L) and (O), and this Court has jurisdiction to enter a final order with respect thereto. Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

B.      Each of the Debtors filed a Voluntary Petition for relief under Chapter 11 of the Bankruptcy Code on November 19, 2013. Since the Petition Date, each of the Debtors has continued to operate its business and to manage its properties as a debtor in possession pursuant to Sections 1107(a) and 1108 of the Bankruptcy Code.

C.      On November 20, 2013, this Court entered its Order Granting Debtor's Emergency Motion for Order Directing Joint Administration of Chapter 11 Cases Pursuant to Bankruptcy Rule 1015(b) in SIDG's Chapter 11 case [Doc. No. 9] (the "Joint Administration Order"). Pursuant to the Joint Administration Order, SIDG's Chapter 11 case is being jointly administered with In re: Scrub Island Construction Limited, Case No. 8:13-bk-15286-MGW, under the lead case In re: Scrub Island Development Group Limited, Case No. 8:13-bk-15285-MGW.

D.      No trustee or examiner has been appointed in these cases. On December 12, 2013, the United States Trustee appointed the Creditors Committee pursuant to Section 1102 of the Bankruptcy Code [Doc. No. 64] and, on February 27, 2014, the United States Trustee amended the membership of the Creditors Committee [Doc. No. 162].

E.      SIDG is the owner of the Scrub Island Resort, which is located in the British Virgin Islands and is a member of the Marriott Autograph Collection Hotels.

F.      On February 3, 2014, FirstBank filed a Proof of Claim against SIDG in the amount of $119,275,858.73, of which FirstBank asserted $60,640,000.00 was a Secured Claim and $58,635,858.73 was an Unsecured Claim [Claim No. 10 in the SIDG case] (the "FirstBank SIDG Claim").  On February 3, 2014, FirstBank filed a Proof of Claim against SICL in the amount of $3,199,861.18, all of which FirstBank asserted was a Secured Claim [Claim No. 3 in the SICL case] (the "FirstBank SICL Claim" and, collectively with the FirstBank SIDG Claim, the "FirstBank Claims").

G.      On June 24, 2014, SIDG and SICL filed, as plaintiffs, the FirstBank Lender Liability Adversary Proceeding against FirstBank.  In the FirstBank Lender Liability Adversary Proceeding, the Debtors objected to the FirstBank Claims and sought damages and other affirmative relief against FirstBank.

H.      On July 11, 2014, the Debtors filed with the Court their First Amended Joint Disclosure Statement for First Amended Joint Plan of Reorganization of Scrub Island Development Group Limited and Scrub Island Construction Limited under Chapter 11 of Title 11, United States Code dated as of July 11, 2014 [Doc. No. 257] (the "Joint Disclosure Statement").  On August 19, 2014, the Debtors filed Exhibit D to the Original Plan and Exhibit 1 and Exhibit 2 to the Joint Disclosure Statement [Doc. Nos. 279-281].

I.      The Modified Plan classifies Claims and Equity Interests into 16 separate Classes. The following Classes of Claims and Equity Interests are treated as Impaired under the Modified Plan and are entitled to vote on the Modified Plan:

     a.      Class 2: Secured Claims and Other Claims of FirstBank;

     b.      Class 5: Unsecured Claims of Blue Water Traders Ltd.;

     c.      Class 6: Unsecured Claims of Pablo L. Dardet;

d.      Class 7: Unsecured Claims of Thomas Frederick;

e.      Class 8: Unsecured Claims of Arturo Linares, David Foster, and Scrub Island, LLC;

f.      Class 9: Unsecured Claims of Oscar Rivera and Anabel Rivera;

g.      Class 10: Unsecured Claims (Unsecured Claims Not Otherwise Classified);

h.      Class 11:  Unsecured Claims of the SIU Entities; and

i.      Class 12: Unsecured Claims of Alf Nolan Davis d/b/a A. N. Davis Plumbing and Electrical Services.

J.      On September 4, 2014, the Court entered its Order Conditionally Approving Disclosure Statement, Fixing Time to File Objections to Disclosure Statement, Fixing Time to File Applications for Administrative Expenses, Setting Hearing on Confirmation of the Plan, and Setting Deadlines with Respect to Confirmation Hearing [Doc. No. 298] (the "Disclosure Statement Approval Order").   In the Disclosure Statement Approval Order, the Court (i) determined that the Joint Disclosure Statement met the "adequate information" standards required by Section 1125 of the Bankruptcy Code, and (ii) conditionally approved the Joint Disclosure Statement for distribution to Creditors and Holders of Equity Interests in conjunction with the Debtors' solicitation of votes on the Original Plan.

K.      In the Disclosure Statement Approval Order, the Court (a) scheduled a trial for November 3, 2014 to consider (i) Confirmation of the Original Plan, including timely filed objections thereto, and (ii) motions for cramdown, (b) fixed October 24, 2014 as the last date for the filing of (i) written objections to the Joint Disclosure Statement, (ii) written objections to Confirmation of the Original Plan, (iii) Ballots accepting or rejecting the Original Plan, and (iv) any election under Section 1111(b) of the Bankruptcy Code, and (c) fixed October 30, 2014 as the last date for the filing by the Debtors of a ballot tabulation.

L.      Numerous other matters related to confirmation were also scheduled for hearing commencing on November 3, 2014, including the Motion of FirstBank Puerto Rico for Relief from the Automatic Stay Pursuant to Section 362(d) of the Bankruptcy Code [Doc. No. 69], the Debtors' Motion for Determination of Value of Collateral of FirstBank Puerto Rico [Doc. No. 290], the trial in the FirstBank Injunction Adversary Proceeding filed by the Debtors against FirstBank, various matters in the adversary proceeding brought by FirstBank against the Debtors and the SIU Entities [Adv. Pro. No. 8:14-ap-00987-MGW], and the Motion of FirstBank Puerto Rico to Excuse Receiver from Compliance with Section 543 of the Bankruptcy Code [Doc No. 88].  Many of these pleadings and matters are directly impacted by the entry of this Confirmation Order.

M.      On September 9, 2014, pursuant to the Disclosure Statement Approval Order, the Debtors mailed the Joint Disclosure Statement, the Original Plan, the Disclosure Statement Approval Order, and a Ballot (all of the foregoing documents hereinafter collectively referred to as the "Plan Solicitation Documents") to all Creditors of the Debtors as set forth on the Court's master mailing matrices for the Debtors' Chapter 11 cases.  An appropriate affidavit and certificate of service have been filed by the Debtors with the Court regarding such service (see Doc. No. 307).

N.      On October 24, 2014, the United States Trustee filed with the Court its Renewed Objection to the Debtors' First Amended Joint Plan of Reorganization and First Amended Joint Disclosure Statement [Doc. No. 348] (the "UST Plan Objection").

O.      On October 29, 2014, the Debtors filed with the Court and duly served upon parties in interest the SIU Entities Plan Modification.  The SIU Entities Plan Modification provides (i) for the exercise by Reorganized SIDG or its affiliate of  the SIU Systems Purchase Option for the amount of $1,200,000.00, less a credit equal to certain Postpetition amounts paid

8

by SIDG to the SIU Entities, and the transfer of title to the SIU Systems to Reorganized SIDG or its affiliate, with the closing to occur on the Effective Date; (ii) for Reorganized SIDG's assumption of the SIU Entities Prepetition Contracts, as modified, with the SIU Entities; and (iii) for the treatment of the SIU Systems Purchase Agreement as a Rejected Contract under the Modified Plan.  Except with respect to Class 11 and FirstBank, the SIU Entities Plan Modification does not alter, modify or otherwise affect the treatment of any Classes of Creditors or the Holders of Equity Interests as set forth in the Modified Plan.

P.      On October 28, 2014, four (4) Business Days prior to the commencement of the first day of the Confirmation Hearing (as defined below), FirstBank filed with the Court (i) the Objection of FirstBank Puerto Rico to Approval of Debtors' First Amended Joint Disclosure Statement for First Amended Joint Plan of Reorganization [Doc. No. 351] (the "FirstBank Disclosure Statement Objection"), (ii) the Objection of FirstBank Puerto Rico to Confirmation of First Amended Plan of Reorganization of Scrub Island Development Group Limited and Scrub Island Construction Limited [Doc. No. 352] (the "FirstBank Plan Objection"), and (iii) a Notice of Election under §1111(b) [Doc. No. 353], signifying its decision to have the FirstBank Claims treated under §1111(b) of the Bankruptcy Code.

Q.      On October 29, 2014, the Debtors filed with the Court their Affidavit in Support of Confirmation [Doc. No. 358] (the "Confirmation Affidavit").  The Confirmation Affidavit was served by the Debtors on the United States Trustee and on all parties receiving pleadings in the Bankruptcy Cases pursuant to the Court's CM/ECF Transmission system, including counsel to FirstBank and counsel to the Creditors Committee.  The Confirmation Affidavit was received into evidence at the Confirmation Hearing without objection.

9

R.      On October 29, 2014, FirstBank filed with the Court an Amended Notice of Election under §1111(b)(2) [Doc. No. 355] (collectively, with Doc. No. 353, the "§ 1111(b) Election"), signifying its decision to have the FirstBank Claims treated under  § 1111(b) of the Bankruptcy Code.  In the § 1111(b) Election, FirstBank elected to have the FirstBank Claims treated as Secured Claims.

S.      On October 30, 2014, in accordance with the Disclosure Statement Approval Order, the Debtors filed with the Court their Chapter 11 Ballot Tabulation with respect to the Original Plan [Doc. No. 360], supplemented on November 5, 2014 to attach the Court's Ballot Report [Doc. No. 371] (collectively, the "Ballot Tabulation").  The Ballot Tabulation included (i) all Ballots received by the Court on or before the October 24, 2014 deadline for voting on the Original Plan as extended by the consent of the Debtors.  The Ballot Tabulation was served by the Debtors on the United States Trustee and on all parties receiving pleadings in the Bankruptcy Cases pursuant to the Court's CM/ECF Transmission system.

T.      On October 31, 2014, FirstBank filed with the Court an objection to the SIU Entities Plan Modification [Doc. No. 366] (the "FirstBank SIU Entities Plan Objection").  On October 31, 2014, FirstBank also filed a complaint seeking declaratory relief against the Debtors and the SIU Entities [Adv. Pro. No. 8:14-ap-00987-MGW] seeking a determination as to the SIU Entities Plan Modification (the "SIU Adversary").  On November 26, 2014, SIDG filed a motion to consolidate the SIU Adversary and the FirstBank Lender Liability Adversary Proceeding with the other matters to be heard at the Confirmation Hearing [Doc. No. 400] (the "Motion to Consolidate").

U.      Reserving their right to challenge the § 1111(b) Election and without prejudice to their right to seek to confirm the provisions of FirstBank Option A of the Original Plan and other claims in the FirstBank Lender Liability Adversary Proceeding, on November 1, 2014 and on

November 8, 2014, the Debtors filed the § 1111(b) Plan Modification that proposed the repayment of the FirstBank Claims in full to the extent that such Claims are allowed by the Court.

V.    The terms of the § 1111(b) Plan Modification are set forth in the Modified Plan, and this Court retains jurisdiction to enter orders implementing those terms.   In summary, and without limitation:

a.    The § 1111(b) Plan Modification requires substantial infusions of funds into Reorganized SIDG consisting of a loan and a line of credit from RCB Equities #1, LLC ("RCB") and cash from the SIDG Contributing Shareholders, in the total aggregate amount of approximately $17 million.[4]

b.    The Reorganized Debtors shall pay up to the total amount of $122,475,719.91 to FirstBank over a period of time not to exceed thirty (30) years.[5]

c.    The required first year payments to FirstBank of $1,767,000.00 are to be pre-funded from the contribution of the SIDG Contributing Shareholders.

d.    The funds loaned by RCB will be used in significant part to enhance the operations of the Scrub Island Resort through, inter alia, (i) acquisition and completion of the Partially Completed Villas, (ii) immediate financing of $2.2 million to be used for capital improvements for roads, landscaping, energy efficiency systems, and the like on Scrub Island, and (iii) acquisition of the SIU Systems that will become part of the Additional FirstBank Collateral.   Specifically, on the Closing Date or as soon as practicable thereafter:

i.    RCB shall loan the sum of $2.2 million to Reorganized SIDG for deposit into escrow in the Sinking Fund Account (the "RCB Marina Village Loan").

ii.    The RCB Marina Village Loan shall be secured by a first Lien on three Marina Village units (as described on Exhibit A attached hereto), which shall be free and clear of, and deemed to be released from, the Liens of FirstBank on the Closing Date.  This Confirmation Order shall act as a release of FirstBank's Liens on those three Marina Village units, and FirstBank shall execute the appropriate releases.   This Confirmation Order shall also act to establish RCB's

---

[4] The Debtors seek damages from FirstBank not subject to set-off in the FirstBank Lender Liability Adversary Proceeding.  The Debtors propose that any amounts so received be used to fund the Debtors' capital improvements on Scrub Island or as otherwise directed by the Court.  The Court makes no ruling on this issue at this time.
[5] The Court reserves jurisdiction to reduce this amount in the FirstBank Lender Liability Adversary Proceeding.

first Liens on the three Marina Village units, and Reorganized SIDG shall execute appropriate mortgages, charges or other documents evidencing the RCB first Liens.

iii.     From the escrow account containing the proceeds of the $2.2 million, the sum of $1.2 million less a credit equal to certain Postpetition amounts paid by SIDG to the SIU Entities (the "SIU Systems Purchase Option Price") shall be paid to the SIU Entities to fund Reorganized SIDG's acquisition of title to the SIU Systems.

iv.      The Debtors shall grant to FirstBank, as a result of payment of the SIU Systems Purchase Option Price out of the Sinking Fund Account, a first Lien on the SIU Systems (as more fully described on Exhibit B attached hereto) to secure the repayment of the FirstBank Allowed Class 2B Secured Claim. This Confirmation Order shall act to establish FirstBank's first Lien on the SIU Systems, and Reorganized SIDG shall execute appropriate mortgages, charges or other documents as determined by the Court evidencing the FirstBank first Lien.

v.       The remaining balance of the RCB Marina Village Loan (approximately $1.0 million) shall be transferred into the Sinking Fund Account to pay for some of the capital improvements on Scrub Island described on Debtors' Exhibit 247 admitted at the Confirmation Hearing.

vi.      Through a second credit facility of $11 million (the "RCB Line of Credit"), which shall include the amount of the DIP Lender Allowed Claim, RCB shall finance Reorganized SIDG's acquisition of the five Longview Villas, or Site LV2, Site LV4, Site LV5, Site LV9, and Site LVII-4 (the "Partially Completed Villas"), owned by the Longview Villa Owners and the completion of construction of four of those Longview Villas.

vii.     RCB shall be granted a first or second Lien on the Partially Completed Villas, as the case may be, to secure the RCB Line of Credit.

viii.    On the Closing Date, Reorganized SIDG shall draw $2.15 million on the RCB Line of Credit to make the Cash payments to the Longview Villa Owners as provided in the Modified Plan.

ix.      On the Closing Date, Reorganized SIDG shall also draw on the RCB Line of Credit (a) such funds as it and RCB determine are necessary to commence construction work on the Partially Completed Villas, and (b) funds estimated to be sufficient to cure existing arrearages on

the Blue Water Traders Loan and the Linares/Foster Loan (each of which is secured by existing first mortgages in favor of FirstBank) at the non-default interest rates.    Such actual cure amounts shall be determined by the Court.

    x.        Reorganized SIDG may continue to draw funds on the RCB Line of Credit as necessary to complete construction of the Partially Completed Villas and to enable Reorganized SIDG to make regular monthly payments on the Blue Water Traders Loan and the Linares/Foster Loan.

    xi.       The RCB Marina Village Loan and the RCB Line of Credit shall be cross-collateralized.

    xii.     Upon the sale of a Partially Completed Villa, the first Lien (if any) shall be paid in full, and all remaining net funds shall be paid to RCB.    Upon the sale of any of the three Marina Village units collateralizing the RCB Marina Village Loan, all net funds shall be paid to RCB.  Following payment in full of the RCB Marina Village Loan and the RCB Line of Credit, any surplus funds from the sale of the Partially Completed Villas and the three Marina Village units shall be paid to Reorganized SIDG.

e.       The funds received from the SIDG Contributing Shareholders will be used to make required payments to FirstBank and administrative, priority and unsecured creditors under the Modified Plan and provide working capital for the Scrub Island Resort.

f.       The Debtors intend to recommence their efforts to sell Marina Village units, Little Scrub Island lots, villas on Little Scrub Island, and (ultimately) lots on Big Scrub Island that will be subject to the Liens of FirstBank following the Effective Date.  Title to and possession of all of its assets shall be revested in Reorganized SIDG free and clear of any interests of the BVI Receiver, who shall turn over all such assets to Reorganized SIDG.  All sales of these assets shall be free and clear of any and all Liens of FirstBank, and the Liens of FirstBank shall attach solely to the proceeds of the sales.  The cash proceeds of these sales will be deposited into a segregated bank account (the "Sinking Fund Account") upon which FirstBank shall retain a Lien.    Non-cash proceeds from the sales of Marina Village units and Longview Villas in the form of purchase money mortgages from qualified investors who make down payments of at least 30% shall be held by the Sinking Fund and shall continue to be subject to the Lien of FirstBank, and the payments on those purchase money mortgages shall be collected by the Sinking Fund and remitted annually to FirstBank to reduce the FirstBank Allowed Class 2B Secured Claim. Other funds in the Sinking Fund Account shall be used to maintain, improve and enhance the collateral of FirstBank in order to

13

maximize the value of those assets and to permit the repayment of the entire amount of the FirstBank Allowed Class 2B Secured Claim. The Court will retain jurisdiction to enter such implementing orders as are appropriate to accomplish these goals.

g.    In addition to a payment reserve account to be maintained at FirstBank for the first year following the Effective Date, the Debtors shall maintain at least three bank accounts post-Effective Date: (a) the Sinking Fund Account, which shall be used as set forth in the Modified Plan to maintain, improve and enhance the collateral of FirstBank, (b) an account to be funded by draws on the RCB Line of Credit, which shall be used to fund construction and other costs associated with the Partially Completed Villas and to make payments on the Blue Water Traders Loan and the Linares/Foster Loan, and (c) an operating account which may be used for general operating expenses and other uses not inconsistent with the Modified Plan.  The Court will enter an appropriate order regarding the closing of the accounts maintained by the Debtors in Possession and the BVI Receiver, and the transfer of those funds to the operating account.

h.    As and to the extent required by the Modified Plan, each of the Longview Villa Owners shall transfer the Partially Completed Villa owned by it to Reorganized SIDG on the Closing Date or as soon as practicable thereafter.

i.    Solely with respect to the § 1111(b) Plan Modification, the terms of the Modified Plan are modified with respect to Classes 5 and 8 as follows:

  i.  Article 5.6.2.8 of the Original Plan shall be amended to read:

    On or as soon as practicable following the Closing Date, Reorganized SIDG shall (a) assume the obligations of Blue Water Traders under the Blue Water Traders Loan and (b) cure all arrearages on the Blue Water Traders Loan at the non-default interest rate.  Reorganized SIDG shall make regular post-Closing Date monthly payments to FirstBank under the Blue Water Traders Loan until Site LV4 is sold, at which time the Blue Water Traders Loan shall be paid in full, including any default charges that may be hereafter allowed to FirstBank by order of the Bankruptcy Court.  As long as payments are current on the assumed Blue Water Traders Loan, FirstBank shall not pursue collection of the Blue Water Traders Loan from Blue Water Traders, Oscar Juelle or Maria Cristina Feo Franco.  This provision is without prejudice to the rights of FirstBank and all other parties as to the appropriate cure amounts, and it is the intention of the Plan that FirstBank shall be paid all amounts allowed to it by order of the Bankruptcy Court on the Blue Water Traders Loan.

  ii.  Article 5.9.2.6. of the Original Plan shall be amended to read:

14

On or as soon as practicable following the Closing Date, Linares/Foster, Reorganized SIDG and RCB shall enter into such agreements, deeds, instruments of conveyance, escrow agreements, mortgages and other documents (the "Linares/Foster Implementing Documents") as are necessary to transfer title to Site LV5 to Reorganized SIDG in accordance with the laws of the BVI, free and clear of any and all Liens of any other parties (except as provided in Article 5.9.2.8 or the Linares/Foster Implementing Documents) at an appropriate time and consistent with the terms of the Plan and the protection of the rights of those parties. As set forth in the Plan (and as to be set forth in the Linares/Foster Implementing Documents), upon the sale of Site LV5, the proceeds of such sale shall be paid to RCB.

iii.  Article 5.9.2.8 of the Original Plan shall be amended to read:

On the Closing Date, Reorganized SIDG shall (a) assume the obligations of Linares/Foster under the Linares/Foster Loan and (b) cure all arrearages on the Linares/Foster Loan at the non-default interest rate. Reorganized SIDG shall make regular post-Closing Date monthly payments to FirstBank under the Linares/Foster Loan until Site LV5 is sold, at which time the Linares/Foster Loan shall be paid in full, including any default charges that may be hereafter allowed to FirstBank by order of the Bankruptcy Court. As long as payments are current on the assumed Linares/Foster Loan, FirstBank shall be enjoined from pursuing collection of the Linares/Foster Loan from any party and from sending any notices (unless correcting prior negative notices) to any credit reporting agencies concerning the Linares/Foster Loan. This provision is without prejudice to the rights of Linares/Foster (including the claims of Linares/Foster in the Linares/Foster Adversary Proceeding) and the rights of FirstBank and all other parties as to the appropriate cure amounts, and it is the intention of the Plan that FirstBank shall be paid all amounts allowed to it by order of the Bankruptcy Court on the Linares/Foster Loan.

Should this Court ultimately confirm FirstBank Option A based upon the Shaner Term Sheet, the language in Article 5.6.2.8, Article 5.9.2.6, and Article 5.9.2.8 of the Modified Plan shall revert to the language in Article 5.6.2.8, Article 5.9.2.6, and Article 5.9.2.8 of the Original Plan.

W.  The Court held hearings on November 3, 4, 10, 17, 21, 24, 25, and December 1, 2014 (collectively, with the December 22, 2014 hearing, the "Confirmation Hearing") to consider Confirmation of the Modified Plan in accordance with 11 U.S.C. § 1129.

X.     Following the December 1, 2014 hearing, the Court required the parties to mediate their disputes and scheduled a hearing for December 16, 2014 to conclude the presentation of evidence and hear additional argument with respect to confirmation issues.

Y.     On December 4, 2014, FirstBank filed its Supplemental Objection of FirstBank Puerto Rico to Address Debtors' Modification of First Amended Joint Plan on Account of FirstBank's Section 1111(b) Election [Doc. No. 411] (the "FirstBank § 1111(b) Plan Modification Objection").

Z.     On December 15, 2014, FirstBank and the Debtors filed a joint motion requesting that the Court continue the December 16, 2014 hearing to December 22, 2014 in order to allow the mediation discussions to continue [Doc. No. 436]. The mediation resulted in an impasse.

AA.    Prior to the December 22, 2014 hearing, the Debtors filed their Preliminary Post-Mediation Statement as to Confirmation of the Debtors' Plan of Reorganization and the Pending Adversary Proceedings [Doc. No. 441], requesting that the Court confirm the terms of the § 1111(b) Plan Modification without prejudice to the entry of appropriate relief in their favor in the FirstBank Lender Liability Adversary Proceeding. On December 24, 2014, FirstBank filed its Submission of FirstBank Puerto Rico's Position with Respect to Contested Issues and Resolved Issues Regarding Debtors' Section 1111(b) First Amended Joint Plan of Reorganization [Doc. No. 445], which identified twelve objections to confirmation of the Modified Plan that FirstBank intended to pursue, and on December 24, 2014 the Debtors filed their response as to each of those objections [Doc. No. 446].

BB.    On December 29, 2014, FirstBank filed (i) its Objection to "Class 10 Claims" of SIDG Shareholders and Mainsail Related Entities [Doc. No. 449] (the "FirstBank Second Plan Objection"), and (ii) its Objection of FirstBank Puerto Rico to Debtors' Proposed Modifications of

16

First Amended Joint Plan of Reorganization as Modified to Address FirstBank's Section 1111(b)(2) Election [Doc. No. 453] (the "FirstBank Third Plan Objection").[6]

CC.    The Court finds that, based upon the tabulation of Ballots as set forth in the Ballot Tabulation and the evidence at the Confirmation Hearing, the Creditors in Classes 5, 6, 7, 8, 9, 10, 11, and 12 have accepted the Modified Plan in the requisite number and amount required under Section 1126(c) of the Bankruptcy Code.  The Creditors Committee supported Confirmation of the Modified Plan.

DD.    The Court expressly finds that neither the Original Plan, as modified, nor this Confirmation Order adversely affects or changes the treatment of the Claim of any Creditor of the Debtors who has not accepted in writing the Original Plan as so modified.  Accordingly, in accordance with Section 1127(d) of the Bankruptcy Code, the Modified Plan shall be and is hereby deemed accepted by all Creditors of the Debtors who have previously accepted the Original Plan.  No further solicitation or resolicitation of acceptances of the Modified Plan is required under the circumstances.  The Court expressly finds that the Debtors have complied with each of the requirements of Sections 1127(a) and 1127(c) of the Bankruptcy Code with respect to the Modified Plan.

EE.    The Court finds that, based upon the entire record:

a.    The Modified Plan has been proposed in good faith by the Debtors following extensive arm's-length negotiations by and among the Debtors, FirstBank, the Creditors Committee, and other Creditors and parties in interest.

b.    Based upon the Cash presently on hand with the Debtors and the substantial funding to be provided by RCB and the SIDG Contributing Shareholders, Reorganized SIDG will have sufficient funds as of the expected Effective Date to pay, reserve for or escrow all payments required to be made on the

---

[6] The FirstBank Plan Objection, the FirstBank SIU Entities Plan Objection, the FirstBank § 1111(b) Plan Modification Objection, the FirstBank Second Plan Objection, and the FirstBank Third Plan Objection are collectively referred to as the "FirstBank Confirmation Objections."

Effective Date in the amounts required under the Bankruptcy Code and as provided for in the Modified Plan.

c. The Distribution to all Creditors under the Modified Plan will be higher than if the Debtors' Chapter 11 cases were converted to cases under Chapter 7 of the Bankruptcy Code.

d. The Modified Plan requires substantial funding from RCB and the SIDG Contributing Shareholders, and with the Confirmation Deposit (as defined below), the Modified Plan is feasible, and the Confirmation and consummation of the Modified Plan is not likely to be followed by the liquidation or the need for further financial reorganization of the Debtors or the Reorganized Debtors under the Bankruptcy Code.

e. The Effective Date of the Modified Plan shall not occur until the Debtors file a notice with the Court that the funding required as of the Effective Date described in this Confirmation Order has been deposited in escrow (the "Confirmation Deposit"), and is available to fund the obligations described in this Confirmation Order. The notice shall also specify the use of these escrowed funds to pay those obligations.

FF. The Court finds that the Modified Plan and this Confirmation Order, including without limitation the discharge, exculpation from liability, release, general injunction and other related provisions of Article 11 of the Modified Plan, are fair, equitable, reasonable and proper, are in the best interests of the Debtors' Estates, and are binding upon all Creditors and Holders of Equity Interests, whether or not the Claim or Equity Interest of any such Creditor or Holder is Impaired under the Modified Plan and whether or not such Creditor of Holder has accepted the Modified Plan or was entitled to vote on the Modified Plan.

GG. With respect to the requirements of 11 U.S.C. § 1129(a) as applicable to the Modified Plan, the Court finds as follows:

a. Copies of the Plan Solicitation Documents were timely mailed to all Creditors of the Debtors as shown on the Court's master mailing matrices for the Debtors' Chapter 11 cases and to other parties in interest in accordance with the Disclosure Statement Approval Order. The Court hereby expressly finds that (i) timely and proper notice of the Confirmation Hearing and the time fixed for filing objections to, and Ballots on, the Original Plan was given to all Creditors and Holders of Equity Interests of the Debtors and all

18

parties in interest, (ii) such notice was adequate and sufficient to notify all Creditors and Holders of Equity Interests of the Debtors and all parties in interest of the Confirmation Hearing and the objection and voting deadlines as to the Original Plan, and (iii) such notice complied in all respects with the procedural orders of the Court, the Bankruptcy Code, the Bankruptcy Rules, including without limitation Bankruptcy Rules 2002, 3018, 3019, and 9006, and the Local Rules, and otherwise satisfied the requirements of due process. No other or further notice is required.

b.     The Modified Plan complies with each of the applicable provisions of Title 11 of the United States Code, including without limitation the provisions of Sections 1122 and 1123 of the Bankruptcy Code.

c.     As required by Section 1129(a)(2) of the Bankruptcy Code, the Debtors, as the proponents of the Modified Plan, have complied with the applicable provisions of Title 11 of the United States Code.  Without limiting the generality of the foregoing and by way of example, the Debtors have complied with the disclosure and solicitation requirements of Sections 1125 and 1126 of the Bankruptcy Code.  Further, the Court expressly finds that the Joint Disclosure Statement and the Modified Plan contain adequate information for purposes of Section 1125 of the Bankruptcy Code, and that no further disclosure is required by the Debtors in connection with the Modified Plan.

d.     The Modified Plan has been proposed in good faith by the Debtors.  The Modified Plan has not been proposed by any means forbidden by law.

e.     The provisions regarding discharge, exculpation from liability, release, general injunction and related provisions set forth in Article 11 of the Modified Plan are proposed in good faith, are equitable, and are supported by valid consideration.

f.     Any payment made or to be made by the Debtors, in their capacity as debtors or as proponents of the Modified Plan, or by any person issuing securities or acquiring property under the Modified Plan, for services or for costs and expenses in or in connection with the Bankruptcy Cases, or in connection with the Modified Plan and incident to the Bankruptcy Cases, has been approved by, or is subject to the approval of, the Court as reasonable.

g.     The identity and affiliations of all individuals who are to serve, after Confirmation of the Modified Plan, as directors or officers of the Reorganized Debtors have been fully disclosed, and the appointment of such individuals to such offices, or their continuance therein, including specifically with respect to Joe C. Collier III, is equitable and is consistent with the interests of the Creditors and Holders of Equity Interests and with public policy.

h.      The identity of, and the nature of any compensation for, any insiders that will be employed or retained by the Reorganized Debtors have been fully disclosed.

i.      No governmental regulatory commission now has, or will have after Confirmation of the Modified Plan, jurisdiction over any rates of the Debtors or the Reorganized Debtors.

j.      With respect to each Impaired Class of Claims or Equity Interests, each Holder of a Claim or Equity Interest of such Class (i) has accepted the Modified Plan or (ii) will receive or retain under the Modified Plan on account of such Claim or Equity Interest property of a value, as of the Effective Date of the Modified Plan, that is not less than the amount that such Holder would so receive or retain if the Debtors were liquidated under Chapter 7 of the Bankruptcy Code on such date.

k.      With respect to each Class of Claims or Equity Interests, (i) such Class has accepted the Modified Plan, or (ii) such Class is not Impaired under the Modified Plan.

l.      The Modified Plan meets the requirements of Section 1129(a)(9) of the Bankruptcy Code.

m.      All Impaired Classes of Claims have accepted the Modified Plan, determined without including any acceptance of the Modified Plan by any insider holding a Claim of such Class.

n.      The Modified Plan meets the requirements of Section 1129(a)(11) of the Bankruptcy Code as set forth above. Confirmation of the Modified Plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of the Debtors, the Reorganized Debtors or any successor thereto under the Modified Plan. The Debtors have demonstrated the likelihood that the Reorganized Debtors will be able to meet their financial and other obligations under the Modified Plan and documents ancillary thereto. The Modified Plan is feasible.

o.      All fees payable under 28 U.S.C. § 1930 through the date of entry of this Confirmation Order have been paid by the Debtors or shall be paid as set forth below in this Confirmation Order. All fees payable under 28 U.S.C. § 1930 for the periods following Confirmation of the Modified Plan shall be paid as set forth below in this Confirmation Order.

p.      The Debtors have no "retiree benefits" (as such term is defined in Section 1114 of the Bankruptcy Code) payable pursuant to 11 U.S.C. § 1114.

q.      The treatment of the FirstBank Claims is fair and equitable.

20

HH.    With respect to the UST Plan Objection, the Court finds, based on the evidence presented, the arguments of counsel, and the specific facts of the Bankruptcy Cases, and for the reasons announced on the record at the Confirmation Hearing, that the UST Plan Objection should be overruled.

II.    With respect to the FirstBank Confirmation Objections, the Court finds, based on the evidence presented, the arguments of counsel, and the specific facts of the Bankruptcy Cases, and for the reasons announced on the record at the Confirmation Hearing, that the FirstBank Confirmation Objections should be overruled.

Therefore, with respect to Confirmation of the Modified Plan, all requirements of 11 U.S.C. §§ 1129(a) and (b) have been met.

The Court having made the above findings, it is, accordingly,

**ORDERED**:

1.    The findings of fact and conclusions of law set forth in this Confirmation Order and as made on the record in open court on December 30, 2014, which constitute this Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, are ratified and adopted as findings of this Court and are incorporated herein.

2.    To the extent any of the findings of fact set forth above are deemed to be conclusions of law, such findings of fact are hereby adopted as conclusions of law.  To the extent any of the following conclusions of law are deemed to be findings of fact, such conclusions of law are hereby adopted as findings of fact.

3.    The Joint Disclosure Statement is approved.  The FirstBank Disclosure Statement Objection is overruled in all respects.

4.    The Modified Plan is confirmed in all respects.

5.      The Debtors have complied in all respects with the provisions of Section 1127 of the Bankruptcy Code and the applicable Bankruptcy Rules.

6.      The Effective Date of the Modified Plan shall be the first Business Day on which all of the conditions precedent to the occurrence of the Effective Date contained in Article 10.2 of the Modified Plan, including as modified by the SIU Entities Plan Modification, have been satisfied or waived as provided in Article 10.2 of the Modified Plan.  Promptly following the satisfaction, or the waiver (to the extent waiver is not specifically prohibited by the Modified Plan), of all of the conditions set forth in Article 10.2 of the Modified Plan, the Debtors shall file a notice (the "Effective Date Notice") with the Court designating the Effective Date.  The Effective Date Notice shall confirm the amounts received and held in escrow from the SIDG Contributing Shareholders funding and the RCB funding.  The Debtors shall serve the Effective Date Notice on all Creditors of, and Holders of Equity Interests in, the Debtors.

7.      The UST Plan Objection and the FirstBank Confirmation Objections are overruled in all respects.

8.      The Debtors and the Reorganized Debtors, and their respective directors, officers and agents, are authorized and directed to take all such steps as may be necessary to effectuate and implement the Modified Plan and this Confirmation Order, including, without limitation, the execution and delivery of all instruments of transfer, agreements and other documents including, but not limited to, the Plan Documents (and any amendments, supplements or modifications to any of the foregoing) as may be appropriate or necessary to consummate the transactions contemplated by the Modified Plan and this Confirmation Order.  Prior to the Effective Date, each of the chief executive officer, president or other authorized officer or director of the Debtors (and, on and after the Effective Date, each of the chief executive officer, president, or other authorized officer

or director of the Reorganized Debtors) shall be authorized to execute, deliver, file, or record such contracts, instruments, releases, mortgages, charges, and other agreements or documents, including, without limitation, the FirstBank New Loan A Documents (or, if applicable, the FirstBank New Loan B Documents), the Sinking Fund Account documents, the Plan Funder Loan Documents (or, if applicable, the RCB Loan Documents), and the documents for transferring title to the SIU Systems and take such actions as may be necessary or appropriate, to effectuate and further evidence the terms and conditions of the Modified Plan or any Plan Document or to otherwise comply with applicable law.

9.      The Motion to Consolidate is granted.  Based upon the Court's overruling of the FirstBank SIU Entities Plan Objection, Confirmation of the Modified Plan, and approval of the rejection of the SIU Systems Purchase Agreement, the relief requested in the SIU Adversary is denied as moot.  The Court will enter a separate judgment in the SIU Adversary denying all relief requested therein by FirstBank as moot.  The Debtors and the SIU Entities are authorized and directed to take all such actions and steps as may be necessary to effectuate and implement the transactions contemplated in the Modified Plan, including the SIU Entities Plan Modification, and this Confirmation Order, without the necessity of further order of this Court.

10.      This Court is entering concurrently a final judgment in the FirstBank Injunction Adversary Proceeding permanently enjoining FirstBank's prosecution of the BVI Receivership Proceeding and revesting complete possession and title in the Debtors of all of their Properties pursuant, inter alia, to §§ 1141, 525, 405, and 543 of the Bankruptcy Code.

11.      On the Effective Date, except as otherwise expressly provided in the Modified Plan or this Confirmation Order, all Property of the Estates (including the Causes of Action and any net operating losses) shall vest in the Reorganized Debtors free and clear of any and all Liens,

Debts, obligations, Claims, Cure Claims, Liabilities, Equity Interests, and all other interests of every kind and nature except the Permitted Liens.

12.     All matters provided for under the Modified Plan involving the corporate structure of the Debtors or the Reorganized Debtors, or any corporate action to be taken by or required of the Debtors or the Reorganized Debtors, shall, as of the Effective Date, be deemed to have occurred and be effective as provided in the Modified Plan or in this Confirmation Order, and shall be authorized and approved in all respects without any requirement for further action by the stockholders or directors of the Debtors or the Reorganized Debtors.

13.     Each of the Debtors will continue to exist after the Effective Date as a separate corporate entity, with all of the powers of a corporation under the laws of the British Virgin Islands and pursuant to its applicable corporate governance documents in effect prior to the Effective Date, except to the extent such corporate governance documents are amended or amended and restated as provided in the Modified Plan or the Confirmation Order or otherwise, without prejudice to any right to terminate such existence (whether by merger, dissolution or otherwise) under applicable law after the Effective Date.

14.     On the Closing Date, (i) all of the Reorganized SICL Shares shall be issued to Reorganized SIDG, and SICL and Reorganized SICL are authorized and directed to cause all of the Reorganized SICL Shares to be issued to Reorganized SIDG, and (ii) all of the Reorganized SIDG Shares shall be issued and/or pledged to RCB and the SIDG Contributing Shareholders and SIDG and Reorganized SIDG are authorized and directed to cause all of the Reorganized SIDG Shares to be issued and/or pledged to RCB and the SIDG Contributing Shareholders.

15.     Pursuant to the Modified Plan, on the Effective Date, the Causes of Action shall be vested in the Reorganized Debtors, except to the extent a Creditor or other third party has been

specifically released from any Cause of Action by the terms of the Modified Plan or by a Final Order of the Court.  Neither a vote to accept the Modified Plan by any Creditor nor the entry of this Confirmation Order will act as a release, waiver, bar or estoppel of any Cause of Action against such Creditor.  Confirmation of the Modified Plan and entry of this Confirmation Order is not intended to and shall not be deemed to have any res judicata or collateral estoppel or other preclusive effect that would preclude or prohibit prosecution of such Causes of Action following Confirmation of the Modified Plan.

16.    The Creditors Committee shall continue in existence until the Effective Date. Thereafter, (a) the Creditors Committee shall be deemed dissolved and the members of the Creditors Committee shall be deemed discharged from all rights, duties and liabilities arising from, or related to, the Bankruptcy Cases, and (b) the Professionals for the Creditors Committee shall cease providing any services to the Creditors Committee or otherwise in connection with the Bankruptcy Cases.

17.    The entry of this Confirmation Order shall be deemed to provide or waive any required authorizations, consents, permits, approvals, or licenses from, and all filings with, and all reports to, any Governmental Unit, whether foreign, federal, state, or local, and all agencies thereof, which are required for the execution, delivery and performance of the documents or obligations provided for under the Modified Plan or in this Confirmation Order.  The Court requests the government of the British Virgin Islands to recognize the provisions of the Modified Plan under applicable principles of law, including the principles of comity.

18.    On, or as soon as practicable following, the Effective Date, the Reorganized Debtors shall (i) make the Initial Distribution as provided in Article 9.1 of the Modified Plan, (ii) execute and deliver the Plan Documents in accordance with the provisions of the Modified Plan, and (iii)

otherwise carry out their other Effective Date responsibilities under the Modified Plan, including the execution and delivery of all documentation contemplated by the Modified Plan, the Plan Documents, and this Confirmation Order.

19.    Pursuant to Section 1146(a) of the Bankruptcy Code, the issuance, distribution, transfer, pledge or exchange of any Security (including the Reorganized SIDG Shares and the Reorganized SICL Shares), or the making, delivery or recording (including in the British Virgin Islands) of any instrument of transfer, pursuant to, in implementation of or as contemplated by the Modified Plan or any Plan Document, or the vesting, re-vesting, transfer or sale of any Property of, by or in the Debtors or their Estates or the Reorganized Debtors pursuant to, in implementation of or as contemplated by the Modified Plan or any Plan Document, or any transaction arising out of, contemplated by or in any way related to the foregoing, shall not be subject to any document recording tax, stamp tax, conveyance fee, intangible or similar tax, mortgage tax, stamp act, real estate transfer tax, mortgage recording tax, Uniform Commercial Code filing or recording fee, or other similar tax or governmental assessment, and the appropriate state or local or foreign governmental officials or agents shall be, and hereby are, directed to forego the collection of any such tax or governmental assessment and to accept for filing and recording any of the foregoing instruments or other documents without the payment of any such tax or governmental assessment.  The Court requests the government of the British Virgin Islands to recognize this provision of the Modified Plan as incorporated in and approved by this Confirmation Order under applicable principles of law, including principles of comity.

20.    From and after the Effective Date, the Reorganized Debtors shall have the exclusive authority to, and shall, file, settle, compromise, withdraw, or litigate to judgment all objections to Claims; provided, however, that the United States Trustee or any party in interest

may file or prosecute objections to any Administrative Expense Claim of a Professional.  Except as to any late-filed Claims and Claims resulting from the rejection of executory contracts or unexpired leases, if any, all objections to Claims shall be filed with the Court by no later than ninety (90) days following the Effective Date (unless such period is extended by the Court upon motion of the Debtors or the Reorganized Debtors). Objections to late-filed Claims and Claims resulting from the rejection of executory contracts or unexpired leases shall be filed on the later of (a) thirty (30) days following the Effective Date or (b) the date thirty (30) days after the Reorganized Debtors receive actual notice of the filing of such Claim.

21.    Except as otherwise provided in the Modified Plan or in this Confirmation Order, the Debtors and the Reorganized Debtors shall be discharged on the Effective Date from any and all Claims, Cure Claims, Debts, Equity Interests, Liens, encumbrances, contract rights, rights of setoff, or Liabilities of any nature (whether contingent, fixed, liquidated, unliquidated, matured, unmatured or disputed) that arose from any acts or conduct of the Debtors occurring prior to the Confirmation Date.

22.    Except as otherwise expressly provided in the Modified Plan or in this Confirmation Order, as of the Effective Date, the provisions relating to discharge, exculpation from liability, release, injunctions, and stays set forth in Article 11 of the Modified Plan shall apply and be fully binding and are hereby incorporated by reference in this Confirmation Order.  The Debtors have satisfied the disclosure requirements set forth in Bankruptcy Rule 3020(c)(1) as to such provisions. The provisions contained in Article 11.3 of the Modified Plan shall not be construed to reduce or abridge any defenses of Professionals or other parties, including, without limitation, defenses of res judicata, collateral estoppel, judicial estoppel, immunity, or the application of the *Barton* doctrine. The Court shall retain exclusive jurisdiction over any claims made or proceedings commenced

against any Professionals representing the Debtors or the Creditors Committee in connection with these Chapter 11 cases.

23.     All rights of Holders of Claims or Equity Interests of all Classes under the Modified Plan, including, without limitation, the right to receive Distributions on account of such Claims or Equity Interests, hereafter shall be limited solely to the right to receive such Distributions exclusively according to the Modified Plan, the provisions of which shall be binding on such Holders to the fullest extent provided by Section 1141(a) of the Bankruptcy Code.  After the date hereof, the Holders of such Claims or Equity Interests shall have no further rights against the Debtors or the Reorganized Debtors except as expressly provided in the Modified Plan or in this Confirmation Order.

24.     The Modified Plan and its provisions shall be binding upon the Debtors, the Debtors' Estates, all Creditors, and all Holders of Equity Interests (whether or not the Claim or Equity Interest of any such Creditors or Holders is Impaired under the Modified Plan and whether or not such Creditors or Holders have accepted the Modified Plan), all parties to any Assumed Contracts or Rejected Contracts, all other parties in interest, and the respective successors and assigns of each of the foregoing.

25.     Based upon the provisions of the Modified Plan that require Reorganized SIDG to pay the Blue Water Traders Loan in full and providing that FirstBank shall retain its Lien on Site LV4 until paid in full, FirstBank is hereby prohibited from prosecuting any debt collection or other action, whether judicial or non-judicial, to collect the Blue Water Traders Loan from Blue Water Traders, Oscar Juelle or Maria Cristina Feo Franco.  Should Reorganized SIDG default in the payment of the assumed Blue Water Traders Loan, and should such default not be cured after notice and a thirty (30) day opportunity to cure provided to Reorganized SIDG, RCB, Blue

Water Traders, Oscar Juelle and Maria Cristina Feo Franco, FirstBank shall be entitled to seek relief from this injunction.

26.    Based upon the provisions of the Modified Plan that require Reorganized SIDG to pay the Linares/Foster Loan in full and providing that FirstBank shall retain its Lien on Site LV5 until paid in full, FirstBank is hereby prohibited from prosecuting any debt collection or other action, whether judicial or non-judicial, to collect the Linares/Foster Loan from Arturo Linares, David G. Foster, or Scrub Island, LLC and from sending any notice (unless correcting prior negative notices) to any credit reporting agency concerning the Linares/Foster Loan. Should Reorganized SIDG default in the payment of the assumed Linares/Foster Loan, and should such default not be cured after notice and a thirty (30) day opportunity to cure provided to Reorganized SIDG, RCB, Arturo Linares, David G. Foster, and Scrub Island, LLC, FirstBank shall be entitled to seek relief from this injunction.

27.    Based upon (a) the provisions of the Modified Plan that require the Reorganized Debtors to pay the Allowed FirstBank Claims in full, (b) the substantial contributions of essential cash necessary to a successful reorganization to be made by Joe C. Collier III[7] and the other SIDG Contributing Shareholders, (c) the continuing provision of management services to be provided by Joe C. Collier III and the Mainsail Related Entities to Reorganized SIDG, (d) the deferral of collection by Joe C. Collier III, the Mainsail Related Entities and the SIDG Shareholders of substantial Prepetition Claims, (e)  the provisions of the Modified Plan providing that FirstBank shall retain its Lien on the FirstBank Collateral until paid in full, and (f) the evidence presented at trial and the totality of the circumstances, FirstBank is hereby prohibited from prosecuting any debt collection or other action, whether judicial or non-judicial, whether direct or indirect, against Joe C. Collier III and CIH Loft LLC.  On the Effective Date, FirstBank

---

[7]  Such contributions to be made on behalf of CIH Loft LLC and Mr. Collier.

shall dismiss the BVI Receivership Proceeding with prejudice. Should Reorganized SIDG default in payments under the Modified Plan, and should such default not be cured after notice and a sixty (60) day opportunity to cure provided to the Reorganized Debtors, RCB, and Joe C. Collier III, FirstBank shall be entitled to seek relief from this injunction.

28.    Based upon (a) the provisions of the Modified Plan that require the Reorganized Debtors to pay the Allowed FirstBank Claims in full, (b) the provisions of the Modified  Plan providing that FirstBank shall retain its Lien on the FirstBank Collateral until paid in full, (c) Reorganized SIDG's payment of the SIU Systems Purchase Option Price to the SIU Entities, (d) Reorganized SIDG's acquisition of title to the SIU Systems, (e) the granting to FirstBank of a first Lien on the SIU Systems to secure the repayment of the Allowed FirstBank Claims, and (f) the evidence presented at trial and the totality of the circumstances, FirstBank is hereby permanently prohibited from prosecuting any debt collection or other action, whether judicial or non-judicial, whether direct or indirect, or from attempting to enforce the SIU Systems Purchase Agreement against the SIU Entities or their respective directors, officers, agents and investors, including but not limited to Adeline Investment Properties, L.P., the OGM Family Limited Partnership (a Delaware partnership), Jonathan Sprague and Donald Mayer.  On the Effective Date, the SIU Adversary shall be dismissed with prejudice.

29.    Any other executory contract or unexpired lease that exists between the Debtors and another Person or Entity and not listed on Exhibit A to the Modified Plan and that has not been expressly assumed or rejected by the Debtors with the Bankruptcy Court's approval on or prior to the Confirmation Date, including any executory contract or unexpired lease (i) that has been rejected pursuant to an order of the Bankruptcy Court entered prior to the Effective Date, (ii) as to which a motion for approval of the rejection of such executory contract or unexpired

lease has been filed and served prior to the Effective Date, or (iii) that is specifically listed on

Exhibit F to the Modified Plan (all of the foregoing, collectively, the "Rejected Contracts"), shall

be deemed rejected by the Debtors as of the Confirmation Date, unless there is pending before

the Court on the Confirmation Date a motion to assume such executory contract or unexpired

lease.  This Confirmation Order shall constitute an order of the Court approving the rejection of

each such executory contract and unexpired lease, pursuant to Sections 365 and 1123(b)(2) of the

Bankruptcy Code.

30.     Unless otherwise ordered by the Court, any Claim for damages arising by reason

of the rejection of any executory contract or unexpired lease must be filed with the Court on or

before the Bar Date for rejection damage Claims in respect of such rejected executory contract or

unexpired lease or such Claim shall be forever barred and unenforceable against the Debtors or

the Reorganized Debtors.  With respect to any executory contract or unexpired lease rejected

pursuant to the Modified Plan, the Bar Date for filing rejection damage and other Claims with

the Court shall be thirty (30) days after the Confirmation Date.  The Modified Plan and any other

order of the Court providing for the rejection of an executory contract or unexpired lease shall

constitute adequate and sufficient notice to Persons or Entities which may assert a Claim for

damages from the rejection of an executory contract or unexpired lease of the Bar Date for filing

a Claim in connection therewith.

31.     All settlements, agreements and compromises provided for under the Modified Plan,

and all transactions, documents, instruments, and agreements referred to therein, contemplated

thereunder or executed and delivered therewith, and any amendments or modifications thereto in

substantial conformity therewith, are hereby approved, and the Debtors and the other parties thereto

31

are authorized and directed to enter into them and to perform thereunder according to their respective terms.

32.    The Modified Plan is confirmed in its entirety.  The inclusion of language in this Confirmation Order referring to specific provisions of the Modified Plan or authorizing specific action by the Debtors or the Reorganized Debtors shall not be construed to imply non-approval of other provisions of the Modified Plan or non-authorization of other actions.  The failure to reference or discuss any particular provision of the Modified Plan in this Confirmation Order shall have no effect on the validity, binding effect and enforceability of such provision and such provision shall have the same validity, binding effect and enforceability as every other provision of the Modified Plan.

33.    To the extent of any inconsistency between the terms of the Modified Plan and this Confirmation Order, the terms of this Confirmation Order shall govern.

34.    All fees and charges assessed against the Estates under Chapter 123 of title 28, United States Code, 28 U.S.C. §§ 1911-1930, for any calendar quarter ending prior to the Effective Date shall be paid to the United States Trustee by the Reorganized Debtors by no later than thirty (30) days following the Effective Date.  Following the Effective Date, any fees required to be paid to the United States Trustee, pursuant to 28 U.S.C. §1930(a)(6), with respect to the Bankruptcy Cases shall be paid by Reorganized SIDG, until the earlier of (i) the closing of the Bankruptcy Cases by the issuance of a Final Decree by the Bankruptcy Court, or (ii) the entry of an order by the Bankruptcy Court dismissing the Bankruptcy Cases or converting the Bankruptcy Cases to another chapter under the Bankruptcy Code.  Any such payment to the United States Trustee shall be in the appropriate sum required pursuant to 28 U.S.C. §1930(a)(6)

based upon the applicable disbursements for the relevant period and shall be made within the time period set forth in 28 U.S.C. §1930(a)(6).

35.    Notwithstanding the entry of this Confirmation Order and the occurrence of the Effective Date, until the Bankruptcy Cases are closed, this Court shall retain the fullest and most extensive jurisdiction of the Bankruptcy Cases that is permitted under applicable law, including that necessary to ensure that the purposes and intent of the Modified Plan are carried out.  Without limiting the generality of the foregoing, after Confirmation of the Modified Plan and until the Bankruptcy Cases are closed, this Court shall retain jurisdiction of the Bankruptcy Cases for each of the specific purposes set forth in Articles 12.1 and 12.2 of the Modified Plan and shall retain complete jurisdiction to enter judgment in the FirstBank Lender Liability Adversary Proceeding. Because modifications to the Original Plan are certain as a result of the pending FirstBank Lender Liability Adversary Proceeding, this Court retains jurisdiction to grant such relief.  This Court shall also retain exclusive jurisdiction over any claims made or proceedings commenced against any Professionals representing the Debtors or the Creditors Committee in connection with the Bankruptcy Cases.  To the extent that this Court does not have jurisdiction, then the United States District Court for the Middle District of Florida, Tampa Division shall have exclusive jurisdiction over any such claims or proceedings.

36.    This Court shall also retain jurisdiction to determine any and all applications for allowance of compensation and reimbursement of expenses of Professionals under Section 330, 331 or 503(b) of the Bankruptcy Code arising out of the Bankruptcy Cases for the periods prior to and through and including the Effective Date.

37.    The stay provided by Bankruptcy Rule 3020(e) shall expire with respect to this Confirmation Order at 12:00 p.m. noon (Eastern Standard Time) on Wednesday, January 28, 2015.

38.    The Court will conduct a post-Confirmation status conference on <u>February 4, 2015 at 10:30 a.m.</u>, in Courtroom 8A, Sam M. Gibbons United States Courthouse, 801 North Florida Avenue, Tampa, Florida.  The Reorganized Debtors shall file a report in the form of the Post-Confirmation Avoidance & Claim Litigation Report (Short Form) prior to the post-Confirmation status conference.

39.    A copy of this Confirmation Order shall be served on the Notice Parties.  Notice of the entry of this Confirmation Order in the form attached hereto as <u>Exhibit C</u> (the "<u>Confirmation Notice</u>") shall be sent to all Creditors of the Debtors as set forth on the Court's master mailing matrices for the Debtors' Chapter 11 cases.  The Confirmation Notice shall reflect that a copy of this Confirmation Order is available on the Internet at <u>www.srbp.com</u>. Counsel for the Debtors shall thereafter file a certificate of service with the Court regarding the foregoing service of this Confirmation Order and the Confirmation Notice.

**DONE** AND **ORDERED** at Tampa, Florida, on _____January 20, 2015_____.


_MGWilliamson_

_____
Michael G. Williamson
United States Bankruptcy Judge


Attorney Charles A. Postler is directed to serve a copy of this order on interested parties and file a proof of service within 3 days of entry of the order.

## **EXHIBIT A to Confirmation Order**

**Marina Village Units**

G101
G203
G204

**EXHIBIT B to Confirmation Order**

## EXHIBIT B

**Water Supply and Wastewater Treatment Agreement**
**TSG Water Resources, Inc. and Scrub Island Development Group Limited**

**Dated December 20, 2006**

### Description of RO System

The "RO System" shall mean all equipment, fixtures, improvements, appurtenances, inventories and supplies of the desalination facilities provided by Contractor pursuant to Contractor's Proposal No. 40-901-03 Rev B, which comprise the facilities at the Resort for the withdrawal of seawater from the sea by open sea intake, the desalination of seawater, the delivery of Finished Water to the Potable Tank, and the discharge of Concentrate, all as more specifically set forth in Contractor's Proposal No. 40-901-03-Rev B dated January 31, 2006.

## EXHIBIT C

**Water Supply and Wastewater Treatment Agreement**
**TSG Water Resources, Inc. and Scrub Island Development Group Limited**

**Dated December 20, 2006**

### Description of Wastewater System

The "Wastewater System" shall include the wastewater treatment system, including all pumps, blowers, piping and control systems but shall not include the Collection System, any pumps, lift stations, or wet wells not installed by Contractor, the Effluent Tank, gray water pumping system, or any irrigation systems, all as more specifically set forth as the 60,000 US gpd MBR option in Contractor's Proposal No. 40-901-03WW dated January 31, 2006.

UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION
www.flmb.uscourts.gov

| | |
|---|---|
| In re: | Chapter 11 |
| SCRUB ISLAND DEVELOPMENT GROUP LIMITED, | Case No. 8:13-bk-15285-MGW |
| | Jointly Administered with |
| SCRUB ISLAND CONSTRUCTION LIMITED, | Case No. 8:13-bk-15286-MGW |
|       Debtors. | |
| _____/ | |

**NOTICE OF CONFIRMATION OF
FIRST AMENDED JOINT PLAN OF REORGANIZATION OF
SCRUB ISLAND DEVELOPMENT GROUP LIMITED
AND SCRUB ISLAND CONSTRUCTION LIMITED
UNDER CHAPTER 11 OF TITLE 11, UNITED STATES CODE
DATED AS OF JULY 11, 2014, AS MODIFIED, PURSUANT TO 11 U.S.C. § 1129**

NOTICE IS HEREBY GIVEN, pursuant to Federal Rule of Bankruptcy Procedure 2002(f)(7), that on January __, 2015, the United States Bankruptcy Court for the Middle District of Florida, Tampa Division, entered its Order Confirming First Amended Joint Plan of Reorganization of Scrub Island Development Group Limited and Scrub Island Construction Limited Under Chapter 11 of Title 11, United States Code Dated as of July 11, 2014, as Modified, Pursuant to 11 U.S.C. § 1129 (the "Confirmation Order"). A copy of the Confirmation Order is available on request to undersigned counsel for the Debtors or can be reviewed at http://www.srbp.com.

Dated: _____, 2015.

/s/_____
Charles A. Postler (Florida Bar No. 455318)
STICHTER, RIEDEL, BLAIN & PROSSER, P.A.
110 East Madison Street, Suite 200
Tampa, Florida 33602
PH    (813) 229-0144
FAX   (813) 229-1811
Attorneys for the Debtors

# Exhibit C

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

IN RE:
SCRUB ISLAND DEVELOPMENT
GROUP LIMITED,

SCRUB ISLAND CONSTRUCTION
LIMITED,

      Debtors.
_____/

FIRSTBANK PUERTO RICO,

      Appellant,

v.                                          Case No: 8:15-cv-256-T-36

SCRUB ISLAND DEVELOPMENT
GROUP LIMITED and SCRUB ISLAND
CONSTRUCTION LIMITED,

      Appellees.
_____/

### O R D E R

The Court has been advised by the Unopposed Motion to Further Extend Briefing Schedule

On Appeal In Light of Settlement (Doc. 21) that the above-styled action has been settled.

Accordingly, pursuant to Local Rule 3.08(b), M.D.Fla., it is

**ORDERED AND ADJUDGED** that this cause is hereby **DISMISSED** without prejudice

and subject to the right of the parties, within ninety (90) days of the date of this order, to submit a

stipulated form of final order or judgment should they so choose **or** for any party to move to reopen

the action, *upon good cause shown*.  After that 90-day period, however, dismissal shall be with

prejudice.  Any pending motions are **denied** as moot and the Clerk is **directed** to terminate all

deadlines and administratively close the file.

**DONE AND ORDERED** in Tampa, Florida on April 17, 2015.

Charlene Edwards Honeywell
United States District Judge

**COPIES FURNISHED TO**:
Counsel of Record